**Roy BELL, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 584S193.

Supreme Court of Indiana.

Dec. 30, 1985.

Charles F. Leonard, Deputy Public Defender, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., and Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Roy Bell, Defendant (Appellant, appeals his conviction by a jury of voluntary manslaughter, a class B felony. Ind.Code § 35-42-1-3(b) (Burns 1979 Repl.). Defendant was sentenced to twenty (20) years imprisonment.

Defendant challenges the sufficiency of the evidence supporting his conviction. He also argues that the State failed to prove beyond a reasonable doubt that he did not act in self-defense pursuant to Ind.Code § 35-41-3-2 (Burns 1979 Repl.). Defendant's argument addresses only the self-defense issue.

We affirm.

The evidence favorable to the State reveals the following facts:

On the evening of October 13, 1982, Defendant was gambling at the victim's home in Fort Wayne, Indiana. The victim operated a "bootleg" casino and bar. The victim left a third party to supervise play while he was away eating dinner. During the victim's absence a dispute arose between the supervisor and Defendant. According to the supervisor, Defendant became angry at him when he took five dollars ($5.00) from the "pot" in a crap game. This amount was to be the house's share of the "pot." Defendant grabbed the money and kept it. At that point, Defendant and a friend left the premises.

After Defendant had departed, the supervisor went into the dining room and began playing cards. Defendant and his friend returned and walked through the dining room into the kitchen. The parties did not speak to each other. Then Defendant came back into the dining room and told the supervisor that he should beat him. The supervisor responded that Defendant should leave him alone and that he would not bother the Defendant. Again Defendant went into the kitchen. Thereafter, the victim returned and began to question the supervisor about his share of the winnings. The supervisor explained to the victim that he had not taken the money, but that he would show him who had taken it.

Victim got a hatchet, either from a hall closet or from the kitchen, and began to question people about the missing money. The victim was in the dining room, and Defendant came to the doorway between the kitchen and dining room. The victim looked at Defendant in an accusatory manner. Defendant admonished the victim not to draw the hatchet on him. The victim moved away from Defendant into the living room doorway. Defendant came into the dining room and knocked a man who was seated next to the supervisor off his chair. He stepped over the fallen man and struck the supervisor on the head with a gun several times. When Defendant's brother asked him why he had hit the supervisor, Defendant said, "Where's that hatchet man, I'm going to kill him."

While the attack was occurring, the victim was standing with the hatchet behind his back against a dining room wall. He moved away from the fight and into the doorway between the dining room and living room. Defendant followed the victim and asked him what he intended to do about the beating. Defendant struck the victim on his head with the gun and moved across the living room toward the outside door. The victim followed him with the axe raised. Defendant turned and fired at least two shots at the victim, striking him in the left chest. The physician performing the autopsy concluded that death was caused by the gunshot wound.

Our standard of review is familiar:

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found, therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." (Citations omitted.)

*Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Defendant relies on our self-defense statute Ind.Code § 35–41–3–2 (Burns Code Ed. 1979 Repl.) in arguing that he was justified in using deadly force because he reasonably believed that such force was necessary to prevent the victim from causing him serious bodily injury. This section read:

"Use of force to protect person or property—Qualified immunity from legal jeopardy.—(a) A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that that force is necessary to prevent serious bodily injury to himself or a

third person or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting himself or his family by reasonable means necessary.

\*   \*   \*   \*   \*   \*

(d) Notwithstanding subsections (a), (b), and (c) of this section, *a person is not justified in using force if:*

(1) He is committing, or is escaping after the commission of, a crime;

(2) He provokes unlawful action by another person, with intent to cause bodily injury to the other person; or

(3) *He has entered into combat with another person or is the initial aggressor,* unless he withdraws from the encounter and communicates to the other person his intent to do so and the other person nevertheless continues or threatens to continue unlawful action." (Emphasis added.)

Defendant has ignored the emphasized portion of this statute. The evidence favorable to the State reveals that the victim did not initiate physical contact with Defendant, but instead shows Defendant was the aggressor. Defendant repeatedly alludes to the fact that the victim was carrying a hatchet, but the record does not show that the victim ever attempted to harm him prior to Defendant's provocatory acts.

In *Loyd supra,* we discussed the criteria for using deadly force in self-defense and we stated:

"The rule in Indiana which permits the employment of deadly force in self-defense, requires that one must (1) act without fault, (2) be in a place where he has a right to be, and (3) act in reasonable fear or apprehension of death or great bodily injury. A defendant claiming the justification of self-defense need only raise the issue so that a reasonable doubt exists. It is then incumbent upon the State to negate beyond a reasonable doubt, the presence of one or more of the necessary elements of self-defense." (Citations omitted.)

272 Ind. at 407, 398 N.E.2d at 1264.

In the case at bar, the evidence warranted the finding that Defendant pro-

voked the victim's unlawful action and was the aggressor. This was sufficient evidence to carry the State's burden ·of proof upon the issue of self-defense. The evidence is sufficient to sustain the State's burden of proof. Defendant is, in essence, asking us to reweigh the evidence and to usurp the factfinder's role. Whether a defendant acted in self-defense is a question of fact for the jury. *Davis v. State* (1983), Ind., 456 N.E.2d 405, 408.

The judgment is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and SHEPARD, JJ., concur.